MITCHELL ET AL. V. WADE.

MORTGAGE: *Created by stipulation of vendee in his deed.*

An agreement and stipulation of a vendee of land, expressed in the deed to him, and which is also executed and acknowledged by him, that the land shall be held subject to a lien of a third party for money loaned, is a declaration of trust by the vendee for the benefit of the lender, and upon recording, the deed becomes, in effect, a mortgage upon the land for the debt.

APPEAL from *Phillips* Circuit Court in Chancery.

Hon. J. N. CYPERT, Circuit Judge.

*Tappan & Horner*, for appellants:

1. Under our statutes no equitable lien can exist. Mortgage liens arise only on the proper filing for record. Notice does not preserve the lien. *33 Ark., 63*, and cases cited.

2. Mortgage is a conveyance of land as security. (*Jones on Mort., sec. 16.*) The grant is essential to create a mortgage. (*Story's Eq., sec. 1018.*) In this case no conveyance was made; only a release of a mortgage lien, and appellee was not even a party to the instrument.

3. Pillow was not a trustee under this release; the *fee* was in him before the agreement was made. (*6 Ark., 269; 14 ib., 637; 18 ib., 170.*) The executors could not charge the land with a trust, because they had no estate in it to charge. When a trust is created for a valuable consideration, no form of words is necessary. (*Perry on Trusts, sec. 82.*) Where the instrument is voluntary, it must clearly and explicitly appear that the party intended to make himself a trustee. (*Ib., sec. 96.*) A meritorious consideration will not create a trust. *Ib., sec. 108, and note 2.*

4. The agreement under which appellee claims lien was not filed for record until after conveyance to appellants. The burden was on appellee to show that it was so filed before the conveyance to appellants.

*M. T. Sanders* and *Wm. W. Smith*, for appellee:

There are, first, sufficient words to create a trust, then a certain subject or person to be benefited, and lastly, a certain object or property to which the trust relates. This is sufficient. *1 Jarman on Wills (3d London ed.)*, *359;* *Williams v. Williams*, *1 Sim. (N. S.)*, *358;* *Briggs v. Penny*, *3 Macn. & G.*, *546;* *Crewys v. Coleman*, *9 Vesey*, *322;* *2 Story Eq. Jur., sec. 964.*

The declaration of trust fully defines Wade's interest. He is the intended beneficiary, and the expressed design is to indemnify him as surety. *Porter v. Hanson*, *36 Ark., 601–2.* See, also, *Perry on Trusts, sec. 14; ib., sec. 95,* and case cited; *Reilly v. Whipple*, *2 S. C.*, *277.*

If no trustee is named, one will be appointed. Equity never suffers a trust to fail for want of a trustee. (*4 Ark., 302.*) The agreement itself raises a trust. *87 Ark., 511; Sto. Eq. Jur., sec. 1231; Ketchum v. St. Louis*, *101 U. S. 306; Pinch v. Anthony*, *8 Allen*, *536.*

This was in fact an equitable mortgage, and equity will give effect to the intention of the parties. *Jones on Mort. R. Prop., sec. 162; Ober v. Gallagher*, *83 U. S., 199.* See, also, *101 U. S., 577; Perry on Trusts, secs. 14 and 38; 36 Ark., 602.*

The tax deed void. *Vernon v. Nelson*, *33 Ark., 748; Haney v. Cole*, *28 Ark., 299; Lawrence v. Zimpleman*, *37 ib., 638.*

The instrument was duly recorded; besides Jacks had actual notice, and the amount of the incumbrance was estimated and a deduction made from the purchase-price.

Hon. Sam. W. Williams, Special J.   On the twenty-sixth
day of October, 1871, John C. Brown and Marion Chil-
dress, executors of John H. Pointer, deceased, Gen. G&sup;
J. Pillow and D. F. Wade, signed a contract and agreement
to the following effect:   Pillow and the executors of
Pointer agreed to compromise a suit in which Pointer's
executors had obtained a final decree of this court for
$152,914.90, which directed a foreclosure of a mortgage
made by Pillow to Pointer's executors on two plantations
in Phillips County, called the Lake place and the Defeat
Cane place.   Against this decree Pillow had prosecuted a
writ of error from the Supreme Court of the United States
and had superseded the decree, but at the date of the com-
promise the cause had not been docketed in the Supreme
Court of the United States.  ·After making a recital of
these facts in the written contract, it was agreed that Pil-
low should dismiss his writ of error and let the decree of
this court stand in full force.   That the decree was to be
satisfied as follows:   Pillow was to pay all court costs and
all the taxes for which the lands might be liable, up to the
first day of January, 1872, and was to discharge all liens
on them, including the claim of the Real Estate Bank of
Arkansas, and to execute a conveyance of all his interest,
legal and equitable, such as might be required to protect
Pointer's executors in the quiet possession and title against
the claim of all parties to the whole of the Lake place, and
that part of the Defeat Cane place which was not agreed
to be relinquished to Pillow.

To secure Pointer's executors in the performance of this
agreement, D. F. Wade, the appellee, who was Pillow's
son-in-law, signed this agreement as security for Pillow,
and the third clause of this agreement is in the following
words:

"Third—For the purpose of securing the party of the sec-

ond part against taxes and costs herein provided for, D. F. Wade guarantees the payment thereof, as the surety of said Pillow, and will execute a bond accordingly with the said Pillow, and the party of the second part agrees to furnish the money to remove the cloud upon the title (if there is any), upon 137 acres of land mentioned in the mortgage, in favor of the Real Estate Bank of the State of Arkansas, but that amount shall be repaid within twelve months after it shall have been advanced, with interest at the rate of ten per cent. per annum until paid by the said Pillow."

The fourth clause is in these words:

"4.   This agreement shall in no wise affect the validity or force of said mortgage, or decree of said court until the conditions annexed shall have been complied with, and the said Pillow shall have paid ·all said costs, taxes and liens or incumbrances upon said land, and shall have paid to the said D. F. Wade, and to the party of the second part, all money, interest and cost expended under the stipula- lations of this agreement.   In default of said payment the parties of the second part shall have the right to enforce said decree for themselves as well as for the use of the said *D. F. Wade, but shall proceed first* upon the 853 acres of land, the western part of the Defeat Cane place herein mentioned more specifically."

The taxes and costs were to be paid by the first day of April, 1872, or as soon thereafter as possible.   After all the conditions were complied with, Pointer's executors were to release and quit-claim to Pillow 853 acres on the west side of the Defeat Cane place, which is described, and when done, the decree was to be satisfied.

On the twenty-second day of May, 1872, by deed of that date, Pillow for himself, and Childress and Brown as executors of Pointer, entered into a joint contract and con- veyance which, after reciting this agreement of October

26, 1871, and copying it into this deed and reciting the performance of the agreement by each party, and that the survey of the 853 acres for Pillow had been made, it proceeds in these words: " Now, therefore, this article in final settlement of the controversy involved in said litigation above referred to, and in final execution of the compromise of the twenty-sixth of October, 1871, witnesseth, that the said Pillow on his part in consideration of the compromise aforesaid, and in final settlement of said controversy, hereby releases and relinquishes to the parties of the second part herein, as executors of John H. Pointer, deceased, his right and equity of redemption as mortgagor, of all the Lake place and body of land thereto attached and belonging, and more fully described in the mortgage of the twenty-fourth of December, 1860, and all of the Defeat Cane place situated north and east of the line run by Capt. Thomas A. Topp, agreeably to the provisions of said articles of compromise, so as to put in said executors of the said John H. Pointer, the absolute fee in said land so released. Pillow gave covenants for title and against incumbrances. The executors in this deed acknowledge satisfaction of their decree in the cause embraced in the compromise, and released to Pillow "all that part of the Defeat Cane place situated south and west of the line run and marked by Topp," and proceeds ·in this clause of the deed, after releasing in these words, " subject nevertheless to be subject to the payment and satisfaction of any outstanding incumbrances upon the lands allotted to said executors, which, by inadvertence or otherwise, may or may not have been extinguished or satisfied, and so far as there may " (be) " any incumbrance, said land allotted to G. J. Pillow is still subject to all provisions of said articles of compromise. *The said G. J. Pillow stipulates and agrees that his portion of the Defeat Cane place shall be still*

*held subject to a lien in favor of D. F. Wade,* his surety in the compromise above embodied herein, for the payment of the amount of money, being eight hundred and ninety-seven and sixty-seven one-hundredth dollars advanced to him as a loan by Pointer's executors to enable him to redeem the land mortgaged to the Real Estate Bank of Arkansas, agreeable to the stipulation of the compromise herein incorporated, and the interest on said sum." This deed was executed by Pillow and Pointer's executors, was acknowledged by each of them in due form on the twenty-third day of May, 1872, and was filed for record on the tenth day of January, but the certificate of record fails to state the year. But the complaint avers that it was duly recorded, and that the defendants had constructive notice by the records, as well as actual notice at the time of receiving their deeds for the land. They deny the actual notice merely, and argue that this was not such a record as gave constructive notice. No issue is made as to the deed being on record in due time and prior to the deeds of defendants.

At the time of making this deed Pillow had not repaid the money borrowed to redeem the land from the Real Estate Bank.

Afterwards Pointer's executors sued Wade in Tennessee and made him pay the amount of the loan, interest and cost. Gen. Pillow, in 1873, divided the lands allotted to him on the Defeat Cane place equally between his two daughters, Mrs. Lizzie P. Johnson and Mrs. Narcissa P. Mitchell, giving each a separate deed for a divided half. These deeds were voluntary in consideration of " mutual " love, as written, (perhaps a mistake of the copyist for natural love.)

Each of the grantees in these voluntary deeds had full knowledge at the time, of this incumbrance.

Jacks bought some portion of the lands at several tax sales in different years.   Mrs. Johnson, in December, 1877, conveyed her interest to Jacks by quit-claim deed, so Jacks says in his answer; no deed is exhibited.   He also says in his answer, that he was in possession under his tax deeds at the time Mrs. Johnson conveyed her interest to him.   But he never proved this; although he testified as a witness, he did not state it.   He denies in his answer that. he had *actual* notice, but as a witness he merely says that he was told of this incumbrance when he purchased, and that he searched the records and could not find it, and did not find it for months, perhaps years, afterwards, though he had some experience as a searcher.   Yet he does not pretend that this deed was not then of record, but only that he failed to find it.

Mrs. Johnson swears distinctly, and stands uncontradicted by Jacks or any one else, that she and her husband talked the matter over with Jacks, before and at the time he bought her interest; that Jacks expressly promised to pay her part of the Wade debt so soon as Mrs. Mitchell's part could be ascertained and adjusted, and that he, Jacks, got a deduction in price in consequence of this incumbrance and his promise to pay it.

Wade filed his bill in this case to enforce this lien reserved to him in Pillow's agreement and deed ; Pillow being dead at the time, his administrator and Mitchell and wife, Mrs. Johnson, whose husband was then dead, and Jacks were made defendants.   The court below, after finding the above facts, substantially rendered a decree against Pillow's administrator for the whole debt, and decreed that it be charged upon the land, dividing the debt into two equal parts, decreeing as to Jacks' part that, unless paid, the land should be sold; that, as to Mrs. Mitchell's part, she being a married woman, that it be paid out of the rents and

profits, and appointed a receiver to collect them. Jacks, Mitchell and wife, appealed.

Jacks' counsel here, for obvious reasons, make no allusions to the tax deeds; but contend that a grant is necessary to create a mortgage; that there must be a conveyance of the legal title, and *that* must be recorded to create a lien. That under our statute no equitable lien could exist against a vendee claiming under the party creating the lien. That a mortgage lien lies only on the proper filing for record. That this was not a declaration of trust, because the executors had nothing but a mortgage lien to release. It would seem that counsel overlooked the fact that Pillow was the real owner, and it was he, in the stipulation above copied, who made the declaration of trust in favor of Wade, for a valuable consideration, while the executors reserved their original mortgage and decree of foreclosure in full force for Wade's benefit, if necessary.

We have looked carefully into all the tax deeds, notwithstanding counsel have not pressed them. We find that the one made on the sale of March 9, 1868, fails to show the year for which the taxes were due, and lacks the proof, by recitals or otherwise, which was required under the statute under which the sale was made, to make it valid.

The tax deed made for the taxes of 1868, and that of 1873, and that of 1877, though each made under laws that made the deeds themselves evidence of prerequisite acts to the sale without recitals, we find in every instance that the sales were made on a day different to that authorized by law, varying materially and widely sometimes, from the day required, too widely even to reasonably presume a beginning of the sale on the right day and continuing for want of time; but, if that were the case, the deed should show that the sales began on the proper day. This is a question of power in the officer selling, not a mere irregu-

larity in the manner of executing a power. *Hogan v. Brashear, 13 Ark., 242.*

As to the tax deed of 1873, it is evident that the collector fell into the common error of supposing that the act of the seventeenth of March, 1873, which extended the time for paying taxes thirty days, also extended the time for the delinquent sales for a like period; whereas the act making no provision for sales and the thirty days' extension, carrying the time beyond the second Monday of May, the time required by law for the sale, there could be no legal sale, and the sale of this land on the twenty-fourth day of May, 1873, was without power in the collector.

We are, however, spared the necessity of deciding upon the validity of these tax deeds. For if it be true that the lien of Wade was a strict mortgage, unrecorded under the statute regulating mortgages, as construed in *Main v. Alexander, 9 Ark., 112,* then Jacks' title would be good, independent of the tax deeds; and if, on the other hand, it is one of those trusts or equitable liens, that is without the provisions of the statute regulating mortgages, such as would affect purchasers with actual notice under the law as it stood at the time of Jacks' purchase, so as to affect him, then Jacks' purchase from Mrs. Johnson with full knowledge of the rights of Wade, and an express promise to pay as a part of the consideration of Mrs. Johnson's sale, it was such a waiver of his rights as would estop him to set them up against Wade after he had accepted Mrs. Johnson's deed. Therefore, the sole question in this case, necessary to decide, and which we do decide, is the one presented and so ably argued by the counsel of appellants.

We think that the record in this cause sufficiently discloses the fact that the deed of Pillow and Pointer's executors, containing this declaration, stipulation and agreement of Pillow in favor of Wade, was properly of record be-

25

fore Pillow conveyed to his daughters, and. it had like effect to a duly recorded mortgage in form.   It was a declaration of trust on the part of Pillow at the very time and in the very act of receiving back from Pointer's executors his beneficial interest unincumbered, and united in himself the equitable and legal title, and upon this consideration that he stipulates and agrees that Wade shall have this lien. This is all that it is necessary to decide in this case.   But we may add that, even if this declaration had not been re-corded, we should look carefully to see whether it did not belong to that class of liens and trusts such as vendor's liens, resulting and constructive trusts, and certain classes of declared trusts as to which we have held that a purchaser to protect himself must show innocence, aud which are not affected by the provisions of the statute which regulate technical mortgages.   In such a case as this, where Mrs. Johnson and Mrs. Mitchell not only had notice but were volunteers, not purchasers for value, and where Jacks purchased from one who stood in Pillow's shoes, who cer-tainly was bound, under an express promise to pay, we should be loth to extend the rule in *Main v. Alexander*, *9 Ark., 112*, and *Duval v. Carnal, 22 Ark., 136*, so far as to apply it to a constructive mortgage like this, and thereby assist in the perpetration of a fraud.

We find no error as to Jacks prejudicial to him.

The court below decreed that Mrs. Mitchell's part of the land should be rented out by a receiver, and that the rent should be applied to the extinguishment of the debt charged upon her land.

As Wade had as against Pillow, under his declaration, a perfect lien on all the land, no vendee of Pillow's with notice had any right to embarrass Wade in the enforcement of his lien.

But as this error was obviously to the advantage of Mrs.

Mitchell, and Wade has not appealed, it will be no ground for reversal in favor of appellants.

Finding no material error, the decree of the court below is affirmed.